# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEY ERWIN,<br><br>       Plaintiff,<br><br>    v.<br><br>PAM AHLIN, et al.,<br><br>       Defendants. | Case No. 1:18-cv-00050-SAB (PC)<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS**<br><br>(ECF No. 9)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff Joey Erwin, a civil detainee, is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On February 21, 2018, the Court screened Plaintiff's complaint and he was ordered to either notify the Court that he was willing to proceed on the claims found to be cognizable or to file an amended complaint. Currently before the Court is Plaintiff's first amended complaint, filed March 26, 2018.

## I.

## SCREENING REQUIREMENT

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e)

applies to all in forma pauperis complaints, not just those filed by prisoners); <u>Calhoun v. Stahl</u>, 254 F.3d 845 (9th Cir. 2001) (dismissal required of in forma pauperis proceedings which seek monetary relief from immune defendants); <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss in forma pauperis complaint under 28 U.S.C. § 1915(e)); <u>Barren v. Harrington</u>, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim). The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

In reviewing the pro se complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. <u>Iqbal</u>, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. <u>Iqbal</u>, 556 U.S. at 678.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff is a civil detainee at Coalinga State Hospital as a sexually violent predator ("SVP") under California's Sexually Violent Predator Act ("SVPA"), California Welfare and Institutions

Code, section 6600 et seq. (First Am. Compl. ("FAC") 5,[1] ECF No. 9.) Plaintiff contends that his rights under the First, Fourth, and Fourteenth Amendments are being violated because he is unable to own and possess games and associated hardware and a laptop computer by Title 9, section 4350. (FAC 6.) Plaintiff argues that section 4350 is unconstitutional, violates expo facto and double jeopardy and is a punitive regulation. (FAC 6.)

On December 27, 2017, Plaintiff received a copy of Title 9, section 4350 which was implemented as an emergency amendment. (FAC 6.) Plaintiff contends that section 4350 and section 880-892[2] are regulations designed for prisoners that are confined in the Department of State Hospitals ("DSH") and that by he is being subjected to the same punitive terms of confinement as inmates sent to DSH for treatment of a mental health commitment and therefore the regulation is punitive in nature. (FAC 7.) Plaintiff contends that by implementing and supporting the regulations, Pam Ahlin, Director of State Hospitals, and Brandon Price, Director of Coalinga State Hospital, violate the treatment Plaintiff is to receive while civilly committed and also violate expo facto and double jeopardy by being punitive and subjecting him to cruel and unusual punishment. (FAC 8.) Plaintiff argues that since prisoners are allowed the right to access the internet and possess games that have the ability to access the internet, denying a SVP identical or similar access violates his rights under the Fourteenth Amendment. (FAC 8.)

Plaintiff also contends that banning electronic devices (computers, games, radios, MP3 players, etc.) violates his rights because he has returned to a punitive setting much more restrictive than when he was incarcerated in the California State Prison System which violates his rights under the First, Fourth, and Fourteenth Amendments. (FAC 8-9.) As of January 28, 2018, Plaintiff's personal property was removed pursuant to section 4350. (FAC 9.) Plaintiff states that his rights have been violated when Defendants implemented and enforced a computer moratorium preventing him from purchasing approved personal laptop computers and electronic games, and

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[2] Section 880-892 set forth patient's rights and the process for filing a complaint and appealing a decision within the Department of Mental Health under the Lanterman-Petris-Short Act for members of the general public who need to be evaluated or treated. Cooley v. Superior Court, 29 Cal. 4th 228, 253 (2002), as modified (Jan. 15, 2003).

then implementing new regulations, California Code of Regulations, Title 9, section 4350, which allowed the Director of State Hospitals to pick up electronic games and computers already in Plaintiff's possession.  (FAC 9-10.)

On March 7, 2006, patients were allowed the right to own and possess personal laptop computers, DVD players, and PlayStations.  (FAC 10.)  DSH employees were allowed to modify the devices so they were determined not to be accessible to the internet up to five miles or more from the hospital grounds.  (FAC 10.)  Plaintiff was allowed to purchase a Palm Pilot for his use with the approval of laptop computers, games, and other electronic accessories.  (FAC 10.)  The administrators at the time stated that ownership of these devices would enhance the therapeutic atmosphere of the hospital.  (FAC 10.)

In October of 2009, the Director of DSH took steps to implement section 4350 which forbid the ownership of personal laptop computers and electronic gaming devices by Plaintiff within the DSH.  (FAC 10.)  Prohibited devices include desktop computers, laptop computers, cellular phones, electronic gaming devices, personal digital assistants, graphing calculators and radios.  (FAC 10-11.)  This regulation was implemented and took effect in 2010.  (FAC 11.)  Plaintiff contends that this regulation is overbroad, vague, and punitive.  (FAC 11.)  As written the regulation does not define or distinguish wireless internet devices that are pre-internet wireless devices, remotes, and electronic devices with no internet capability like a common radio.  (FAC 11.)  Section 4350 was placed into effect because of supposed violations of hospital policies and state and federal laws and allows defendants to seize any electronic device as internet capable.  (FAC 11.)  Plaintiff has not violated any hospital policies, or state or federal laws concerning the ownership of his electronic devices.  (FAC 11.)

On August 16, 2016, Plaintiff learned that the defendants planned to implement California Code of Regulations, Title 9, section 4350-Contraband Electronic Devices with Communication and Internet Capabilities.  (FAC 11.)  Plaintiff contends that this is a prison regulation applying to the California Department of Corrections and Rehabilitations ("CDCR") and applying it to civilly committed individuals places the civil detainee in the category of a prisoner subject to punishment.  (FAC 11.)  Plaintiff states that prisons and other local penal institutions are allowed to have the

electronic devices that he is being prevented from owning. (FAC 11.)

The CDCR is currently allowing the advancement of technology within the prison industry by purchasing 500 tablets to be used by inmates at the California Men's Colony as a tool for educational and vocational training. (FAC 12.) These wireless devices allow inmates to communicate work assignments and tests via wireless communication to the prison instructor without the need of a classroom. (FAC 12.) For entertainment purposes, the CDCR allows X-Boxes and PlayStations as long as the wireless devices are inoperable and disconnected. (FAC 12.) State prisoners are allowed to purchase and own computer tablets, PlayStations, and X-Boxes without security concerns as long as the internet devices are disconnected. (FAC 12.) Plaintiff contends that he is being subjected to punitive conditions by not being allowed to own the same items. (FAC 12.) Plaintiff contends that only detainees who have committed violations should be subject to prosecution and not Plaintiff who has not committed any violation of state or federal laws. (FAC 12.) Plaintiff also alleges that denying him such devices violates his right to own devices which allows protected speech to be expressed. (FAC 12.)

On December 23, 2017, Plaintiff received a copy of the proposed regulation that Pam Ahlin is implementing to now include electronic devices other than Wi-Fi. (FAC 13.) On January 13, 2018, the facility was locked down and searched and Plaintiff's property was removed from his possession. (FAC 13.) This included pens and pencils, books, DVD players, factory DVDs, all electronic devices including X-Plod radios, cassette players, cassettes, Wiki-Readers, book readers, calculators, shavers, watches, pictures, cables etc. (FAC 13, 14-15.) Plaintiff did not receive a receipt for his property and has not received any of his confiscated property back. (FAC 13.)

Brandon Price is responsible for enforcing this new regulation. (FAC 13.) This amended regulation has removed from Plaintiff the ability to own all media devices which have the capability to store data: including Plaintiff's MP3 player which stores music for entertainment; flash drives used to store legal materials, letters, and briefs; hard drives used to store legal data, music, and television series, and storage of current court decisions and opinions. (FAC 13.) Since 2014, patients have been allowed to scan their legal work to digital copies and stored these copies

on personal hard drives to remove excess storage of paperwork which was considered a fire hazard. (FAC 13.)  Plaintiff destroyed most of his legal work in paper form and only has the information stored on his hard drives.  (FAC 14.)

Plaintiff has an MP3 player with approximately 2,000 songs for personal listening; DVD players, Micca Media device, Blu-Ray player, DVR, memory devices, hard drives with over 20,000 MP3s.  (FAC 14.)  Plaintiff has invested over $10,000 in DVD and Blu-Ray movies and has collected many series for his personal use and viewing.  (FAC 14.)  Plaintiff has been advised that pursuant to this new regulation he will only be allowed a combination of 30 music CDs and DVDs.  (FAC 14.)  Plaintiff contends this is punitive because CDs and DVDs do not constitute a security threat to the institution.  (FAC 14.)  Plaintiff was previously allowed to purchase blank DVD and readers/writers with the knowledge that they would be used to copy movies and music. (FAC 14.) Sony, MGM, and Blu-Ray give permission to download movies on your personal media players to view, as well as streaming for series produced by Netflix, Disney, etc.  (FAC 14.) Plaintiff contends that taking copies of movies from patients who do not have money to buy the original movies amounts to cruel and unusual punishment.  (FAC 14.)  Plaintiff states that he bought his movies and series as originals and he should not have to mail them home as contraband when he was previously allowed to possess them without restriction just to satisfy a false security concern.  (FAC 14.)

Finally, Plaintiff contends that the child pornography which the defendants are using to justify removing the memory storage devices was introduced into the hospital by staff.  (FAC 15.) The state court records reflect that between nine months to one year ago, two state employees were apprehended bringing child pornography and cell phones into the institution.  (FAC 15.)  Cell phones, pornography, wireless devices, alcohol, drugs, and tobacco have been and continue to be introduced into the hospital by patients willing to pay for the contraband material to staff.  (FAC 15.)  Plaintiff alleges that he should not be punished for the actions of other individuals.  (FAC 15.)

Plaintiff has been allowed to purchase these items for 4 to 5 years and then after some patients started misusing approved items, the DSH issues a blanket ruling declaring the items to

be contraband thus punishing the innocent with the guilty. (FAC 15.) Now all the money Plaintiff has spent purchasing the items at one and a half times their actual cost will be lost. (FAC 15.) Plaintiff works as a janitor making $52.50 per month and it takes him more than six months to save the money to purchase an X-Box or tablet because he has no family members able to buy them for him. (FAC 16.) Plaintiff contends that taking away the items will make the institution more dangerous because the detainees will have no way to entertain themselves and it will open the door to violence. (FAC 16.) Plaintiff argues that the least restrictive way to address the security concerns would be to stop allowing blank CDs and DVDs as well as DVD burners. (FAC 16.) If the defendants start to police their own employees (for example, Kory G. Cooper (child porn, etc.) and Carla K. Magdaleno (tobacco, cell phones, etc.)) the criminal acts of the staff members and patients will cease. (FAC 16.)

Plaintiff contends that Pam Ahlin and Brandon Price violate his rights under the First and Fourteenth Amendments by denying him access to the internet. (Compl. 15.) Plaintiff is not allowed any electronic devices or any internet access, yet in San Francisco County Jail more than 200 adult inmates acquire skills and earn high school credits using tables provided by the American Prison Data Systems. (Compl. 15.) Eight states, Ohio, North Dakota, Georgia, Louisiana, Virginia, Michigan, Washington, and Colorado, now regularly allow their prison inmates to possess tablets. (Compl. 15-16.)

Plaintiff contends that the regulation violates his right to access the internet under the First and Fourteenth Amendment. (FAC 18.) Plaintiff is not allowed any access to the internet, no matter how limited. (FAC 18.) Other correctional facilities allow inmates to use tablets to earn high school credits and allow inmates to possess tablets. (FAC 18-19.) A prison in North Dakota limited electronics provided to one tablet that can be remotely and cheaply monitored by professionals off site. (FAC 19.) Defendants have not explained how this or other less drastic alternatives were not considered prior to implementing a total ban. (FAC 19.)

Plaintiff seeks a declaration of his rights and injunctive relief. (FAC 21-22.)

/ / /

/ / /

**III.**

**DISCUSSION**

Plaintiff is detained as a SVP pursuant to the SVPA. An SVP is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Cal. Welf. & Inst. Code § 6600(a)(1). The SVPA authorizes the involuntary civil commitment of a person who has completed a prison term, but has been given a "full evaluation" and found to be a SVP. Reilly v. Superior Court, 57 Cal.4th 641, 646 (2013). "[SVPs] are involuntarily committed because their mental disease makes them dangerous to others." Seaton v. Mayberg, 610 F.3d 530, 540 (9th Cir. 2010).

**A.    Nature of Action against Defendants**

Here, Plaintiff does not specify whether he is bringing claims against the defendants in their individual or official capacity. The court looks to the basis of the claims asserted and the nature of the relief sought to determine if the claims are asserted against the defendants in their individual or official capacity. Cent. Reserve Life of N. Am. Ins. Co. v. Struve, 852 F.2d 1158, 1161 (9th Cir. 1988).

Personal capacity suits seek to impose individual liability on the government official for actions taken under the color of state law. Hafer v. Melo, 502 U.S. 21, 25 (1991). To state an individual capacity claim, the plaintiff must show that the actions of the defendant caused the deprivation of a federal rights. Id.

An official capacity suit on the other hand is equivalent to a suit against the state itself alleging that the agency's policy or custom played a part in the violation of federal law. Hafer, 502 U.S. at 25. Further, "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).

The complaint filed here does not contain any allegations that the named defendants engaged in any individual wrongdoing. Plaintiff alleges that the named defendants are responsible

for implementing a policy that prohibits him from possessing certain electronic devices and accessing the internet. Plaintiff is attempting to hold the defendants liable for official policies and procedures that are implemented by DSH. Additionally, Plaintiff does not seek monetary damages, but is seeking declaratory and injunctive relief. The nature of the suit clearly indicates that Plaintiff is bringing this action against the defendants in their official capacities. Accordingly, the Court finds that Plaintiff has alleged official capacity claims in this action.

**B.    Fourteenth Amendment Claim Based on Punitive Nature of Section 4350**

Plaintiff's first cause of action alleges that on December 27, 2017, Plaintiff received a copy of a proposed revision to section 4350 of Title 9 of the California Code of Regulations. (Compl. 6.) Plaintiff contends that he is being subjected to a regulation that is intended to apply to prisoners serving a punitive term of commitment. Plaintiff argues that he is entitled to receive more considerate treatment than those serving a punitive sentence and subjecting a civil detainee to a regulation under Title 9 violates his rights under the First, Fourth, and Fourteenth Amendments.

To determine whether conditions of confinement of civilly committed individuals have been violated, courts look to the substantive due process clause of the Fourteenth Amendment. Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982); Jones v. Blanas, 393 F.3d 918, 931-32 (9th Cir. 2004). States are thus required "to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released," and to provide "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir. 2000) (citations omitted).

Although civilly detained persons must be afforded more considerate treatment and conditions of confinement than criminals, where specific standards are lacking, courts may look to decisions defining the constitutional rights of prisoners, to establish a floor for the constitutional rights of persons detained under a civil commitment scheme, Padilla v. Yoo, 678 F.3d 748, 759 (9th Cir. 2012) (citing Hydrick v. Hunter, 500 F.3d 978, 989 (9th Cir. 2007), vacated and remanded on other grounds by 556 U.S. 1256 (2009), and may borrow Eighth Amendment standards to do so, Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Redman v. County of San Diego, 942

F.2d 1435, 1441 (9th Cir. 1991), <u>abrogated on other grounds by</u> 511 U.S. 825 (1994). But the conditions under which civil detainees are held cannot be more harsh than those under which prisoners are detained except where the statute itself creates a relevant difference. <u>Hydrick</u>, 500 F.3d at 989 n.7.

The Due Process Clause requires that the nature and duration of the civil commitment must bear some reasonable relation to the purpose for which the individual is committed. <u>Jones</u>, 393 F.3d at 931. Civilly detained individuals can be subject to restrictions that have a legitimate, non-punitive government purpose and that do not appear to be excessive in relation to that purpose. <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979). "A reasonable relationship between the governmental interest and the challenged restriction does not require an exact fit, nor does it require showing a 'least restrictive alternative.' " <u>Valdez v. Rosenbalm</u>, 302 F.3d 1039, 1046 (9th Cir. 2002) (citations omitted). The only question is whether the defendants might reasonably have thought that the policy would advance its interests. <u>Id.</u>

Under Ninth Circuit precedent, "a restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation to [its non-punitive] purpose,' or is 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods[.]" <u>Jones</u>, 393 F.3d at 934 (citations omitted). "[A] presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment." <u>Id.</u> This presumption can be rebutted by the defendants explaining a legitimate, non-punitive purpose for the conditions imposed. <u>Id.</u>

Plaintiff alleges that he is being subjected to a regulation that is designed for prisoners serving a sentence for penal commitment at the DSH for mental illness. Further, Plaintiff contends that the conditions under which he is being detained are more restrictive than the conditions of prisoners in the custody of the California State Prison. Plaintiff also contends that there are less restrictive alternatives that could be imposed and he is being punished for the wrongdoing of other individuals although he has never violated any hospital policy, or state or federal law concerning

the ownership of his electronic devices. Here, the Court finds that Plaintiff has alleged sufficient facts to state a plausible claim that section 4350 is punitive in nature. Additionally, Plaintiff alleges that Defendants have implemented changes further restricting his ability to own and possess storage devices.

Defendants may be able to provide reasonable justification for the ban on the relevant devices, but at the pleading stage, Plaintiff's allegations are sufficient to state a cognizable conditions of confinement claim based on the ban on ownership of electronic devices and items.

## C.    Internet Access Claim

Plaintiff contends that Defendants have violated his rights under the First and Fourteenth Amendment by denying him the right to access the internet. While Plaintiff contends that he is not allowed any internet access no matter how limited, section 4350 states:

> Electronic devices with the capability to connect to a wired (for example, Ethernet, Plain Old Telephone Service (POTS), Fiber Optic) and/or a wireless (for example, Bluetooth, Cellular, Wi-Fi [802.11a/b/g/n], WiMAX) communications network to send and/or receive information are prohibited, including devices without native capabilities that can be modified for network communication. The modification may or may not be supported by the product vendor and may be a hardware and/or software configuration change. Some examples of the prohibited devices include desktop computers, laptop computers, cellular phones, electronic gaming devices, personal digital assistant (PDA), graphing calculators, and radios (satellite, shortwave, CB and GPS).

Cal. Code Regs. tit. 9, § 4350. Section 4350 prohibits Plaintiff from possessing certain devices that connect to the internet, but it does not prohibit Plaintiff from accessing the internet. However, section 891 provides that "[n]on LPS patients shall not have access to the internet." Cal. Code Regs. tit. 9, § 891. "Non-LPS" means that the placement in or commitment to the facility is pursuant to legal authority other than the Lanterman-Petris-Short (LPS) Act, commencing with Section 5000, of Part 1, Division 5 of the Welfare and Institutions Code)." Cal. Code Regs. tit. 9, § 881(o). The LPS Act governs involuntary treatment of the mentally ill in California. In re Conservatorship & Estate of George H., 169 Cal.App.4th 157, 159 (2008). In contrast the SVPA targets "a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders [who] can be identified while they are incarcerated." Cooley v. Superior Court, 29 Cal. 4th 228, 253 (2002), as modified (Jan. 15, 2003). Further, section 4350 itself provides that

while Plaintiff shall not be in personal possession of the electronic devices, the facility has the discretion to make such devices accessible to the patient on a supervised basis. Cal. Code Regs. tit. 9, § 4350(d).

Simply because inmates retain certain rights does not mean that their rights are not subject to restrictions and limitations. Wolfish, 441 U.S. at 545. Lawful incarceration brings with it the withdrawal or limitation of many privileges and rights that are justified by considerations of the penal system. Id. at 546. "There must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Id. (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)). This principle applies equally to pretrial detainees and pretrial detainees do not possess the full range of freedoms as an unincarcerated individual. Wolfish, 441 U.S. at 546. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Id.

An inmate does not retain rights inconsistent with proper incarceration. Overton v. Bazzetta, 539 U.S. 126, 131 (2003). This includes those First Amendment rights that are inconsistent with status as a prisoner or with the legitimate penological objectives of the corrections system. Jones v. N. Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129 (U.S. 1977). For example, the Supreme Court has held that freedom of association is among those rights least compatible with incarceration and some curtailment of the freedom must be expected. Overton, 539 U.S. at 132; see also Pell v. Procunier, 417 U.S. 817, 826 (1974) (limitations on press interviews); Thornburgh v. Abbott, 490 U.S. 401, 405 (1989) (regulation allowing rejection of incoming mail that was determined be detrimental to security, good order or discipline of the institution or if it might facilitate criminal activity); Block v. Rutherford, 468 U.S. 576, 591 (1984) (denial of contact visits).

Further, courts have routinely held that denying a SVP the right to access the internet does not violate the First Amendment. See Telucci v. Withrow, No. 116CV00025JLTPC, 2016 WL 2930629, at *5-6 (E.D. Cal. May 19, 2016); Consiglio v. King, No. 115CV00969BAMPC, 2016 WL 4000001, at *3-4 (E.D. Cal. July 25, 2016); Cerniglia v. Price, No. 117CV00753AWIJLTPC,

2017 WL 4865452, at *4 (E.D. Cal. Oct. 27, 2017); <u>Carmony v. Cty. of Sacramento</u>, No. CIV S-05-1679LKKGGHP, 2008 WL 435343, at *18 (E.D. Cal. Feb. 14, 2008), report and recommendation adopted, No. CIVS051679LKKGGHP, 2008 WL 795101 (E.D. Cal. Mar. 25, 2008), order vacated on denial of reconsideration (Apr. 9, 2008), and report and recommendation adopted, No. CIVS051679LKKGGHP, 2008 WL 2477646 (E.D. Cal. June 17, 2008). Plaintiff's complaint on its face demonstrates that the regulations restricting access to the internet are in place to address issues with child pornography at DSH and that this continues to be a problem at Coalinga State Hospital. (FAC at 11, 15, 16.)

Plaintiff alleges that his rights under the First Amendment to gather news, express himself to others, and buy and shop on the internet is being violated. "The law generally requires a careful balancing of the rights of individuals who are detained for treatment, not punishment, against the state's interests in institutional security and the safety of those housed at the facility." <u>Hydrick</u>, 500 F.3d at 994. "In weighing those interests, it cannot be ignored that . . . SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others." <u>Id.</u> "Therefore, the rights of SVPs may not necessarily be coextensive with those of all other civilly detained persons." <u>Id.</u>

Four factors are relevant in deciding whether a regulation affecting a constitutional right that survives detainment withstands constitutional challenge: (1) whether the regulation has a valid, rational connection to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and detainees and facility resources; and (4) whether there are ready alternatives to the regulation. <u>Overton</u>, 539 U.S. at 131-132 (internal quotation marks omitted) (citing <u>Turner v. Safley</u>, 482 U.S. 78, 89-91(1987)).

While Plaintiff alleges that he is being denied the right to gather news, express himself to others, and shop and buy on the internet, a computer is just one means for Plaintiff to accomplish these tasks. Plaintiff has other means than the internet to gather news, communicate, and shop such as by television, mail, or telephone. Plaintiff's first amended complaint does not allege that his lawful communication or speech is not allowed by other means. Therefore, the Court finds

that Plaintiff has failed to state a claim under the First or Fourteenth Amendment based on denial of access to the internet.

### D. Double Jeopardy and Ex Post Facto Claims

Plaintiff alleges that applying section 4350 to him violates the Double Jeopardy and Ex Post Facto clauses of the Constitution. The Double Jeopardy Clause precludes "a second prosecution for the same offense," and prevents "the State from 'punishing twice, or attempting a second time to punish criminally, for the same offense.'" Kansas v. Hendricks, 521 U.S. 346, 369 (1997) (quoting Witte v. United States, 515 U.S. 389, 396 (1995)).

Article I, § 10, of the Constitution provides that no state shall pass any ex post facto law. "To fall within the ex post facto prohibition, a law must be retrospective-that is, 'it must apply to events occurring before its enactment'-and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime[.]" Lynce v. Mathis, 519 U.S. 433, 441 (1997) (internal citations omitted).

In Hydrick, the Ninth Circuit Court held that the SVPA is civil in nature and claims challenging the Act under the Double Jeopardy and Ex Post Facto Clauses were foreclosed. Hydrick, 500 F.3d at 993-994. Here, Plaintiff is challenging a regulation that is civil in nature and claims that the regulation as applied is punitive. However, such claims are properly raised under the Substantive Due Process Clause as Plaintiff has done in this action.

A statute that is civil in nature cannot be deemed to be punitive in nature as applied to Plaintiff in violation of the Double Jeopardy and Ex Post Facto Clause. Seling v. Young, 531 U.S. 250, 267 (2001). Plaintiff's challenge on double jeopardy and ex post facto grounds fails as a matter of law.

### E. Confiscation of Property

1. Fourth Amendment

Plaintiff generally alleges that the confiscation of his property violates his rights under the Fourth Amendment. The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. U.S. Const. amend. IV. The Fourth Amendment prohibition against unreasonable search

and seizure extends to incarcerated prisoners and civil detainees. Thompson v. Souza, 111 F.3d 694, 699 (9th Cir. 1997) (prisoners); Hydrick, 500 F.3d at 993 (civil detainees). However, "the reasonableness of a particular search is determined by reference to the prison context." Hydrick, 500 F.3d at 993 (quoting Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir.1988)). Confinement in a state institution raises concerns similar to those raised by housing pretrial detainees, such as "the safety and security of guards and others in the facility, order within the facility and the efficiency of the facility's operations." Hydrick, 550 F.3d at 993 (quoting Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)).

For the Fourth Amendment to apply, there must be a reasonable expectation of privacy in the place that is invaded. Espinosa v. City & Cty. of San Francisco, 598 F.3d 528, 533 (9th Cir. 2010). "The contours of an involuntarily confined civil detainee's right to privacy in his room in a secure treatment facility are unclear, but assuming Plaintiff retains any reasonable expectation of privacy at all in his living area at Coalinga State Hospital, it would necessarily be of a diminished scope given Plaintiff's civil confinement." Warrior v. Santiago, No. 116CV01504AWIGSAPC, 2018 WL 827616, at *4 (E.D. Cal. Feb. 12, 2018) (collecting cases). Although Plaintiff is not a convicted criminal, "he is involuntarily serving a civil commitment term at a secure facility; and he is not a free individual with a full panoply of rights." Ryan v. Siqueiros, No. 1:15-CV-01152 DLB PC, 2016 WL 2898450, at *2 (E.D. Cal. May 18, 2016). Although civil detainees are entitled to more considerate treatment and conditions of confinement than prisoners, Youngberg, 457 U.S. at 322, maintaining facility security and effectively managing the institution are unquestionably legitimate, non-punitive government interests, Jones, 393 F.3d at 932.

Here, Plaintiff alleges that his cell was searched and his property was confiscated because it was deemed to be contraband pursuant to section 4350. Given the context of the allegations here, Plaintiff cannot state a cognizable claim under the Fourth Amendment for seizure of his property.

2. Fourteenth Amendment

Plaintiff alleges that on January 13, 2018, the facility was locked down and Plaintiff's pens and pencils, books, DVD players, factory DVDs, all electronic devices including X-Plod radios,

cassette players, cassettes, Wiki-Readers, book readers, calculators, shavers, watches, pictures, cables etc. were confiscated. (FAC 13, 14-15.)

The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects Plaintiff from being deprived of property without due process of law, Wolff, 418 U.S. at 5563, and Plaintiff has a protected interest in his personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). Authorized, intentional deprivations of property are actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). However, the Due Process Clause is not violated by the random, unauthorized deprivation of property so long as the state provides an adequate post-deprivation remedy. Hudson, 468 U.S. at 533; Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994).

Initially, to the extent that Plaintiff's property was physically confiscated, there are no allegations that Defendants Ahlin or Price personal participated in the confiscation of his property. Accordingly, all liability would be based on the implementation of section 4350. Plaintiff's allegation that his electronic devices and items were confiscated pursuant to section 4350 is sufficient to state a claim.

However, Plaintiff's allegations that officers used section 4350 to confiscate items beyond those allowed by section 4350 fails to state a cognizable claim. First, as discussed above, there is no allegation that Defendants Ahlin or Price were involved in the confiscation of the property. Secondly, the confiscation of such property would not be authorized by section 4350 and would therefore be a random, unauthorized deprivation of property for which the state provides an adequate post-deprivation remedy. Hudson, 468 U.S. at 533 (1984); Barnett, 31 F.3d at 816-17 (California provides an adequate post deprivation remedy for property deprivations). Plaintiff has failed to state a claim for the deprivation of property other than his electronic devices and items.

### F.    Declaratory Relief

Plaintiff seeks an order declaring his constitutional rights. "A case or controversy exists justifying declaratory relief only when the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." Feldman v. Bomar, 518

F.3d 637, 642 (9th Cir. 2008) (quoting <u>Headwaters, Inc. v. Bureau of Land Management, Medford Dist.</u>, 893 F.2d 1012, 1015 (9th Cir. 1989) (internal quotations and citation omitted)).  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  <u>U.S. v. State of Wash.</u>, 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted).

In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated.  Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary in this action.  The Court recommends that Plaintiff's request for declaratory relief be dismissed.

## IV.

## CONCLUSION AND RECOMMENDATION

Plaintiff's complaint states a condition of confinement and deprivation of property claim against Defendants Ahlin and Price based on the ban on ownership of electronic devices and items.  However, Plaintiff has not sufficiently alleged facts to state any other cognizable claims.  Plaintiff was previously notified of the applicable legal standards and the deficiencies in his pleading, and despite guidance from the Court, Plaintiff's first amended complaint is largely identical to the original complaint.  Based upon the allegations in Plaintiff's original and first amended complaint, the Court is persuaded that Plaintiff is unable to allege any additional facts that would support the claims alleged in the first amended complaint, and further amendment would be futile.  <u>See Hartmann v. CDCR</u>, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may not deny leave to amend when amendment would be futile.")  Based on the nature of the deficiencies at issue, the Court finds that further leave to amend is not warranted.  <u>Lopez</u>, 203 F.3d at 1130; <u>Noll v. Carlson</u>, 809 F.2d 1446-1449 (9th Cir. 1987).

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.  This action proceed on Plaintiff's first amended complaint against Defendants Ahlin and Price in their official capacity for a condition of confinement and deprivation of property claim based on the ban on ownership of electronic devices and items;

1    2.    All other claims be dismissed for failure to state a claim; and

2    3.    Plaintiff's request for declaratory relief be dismissed.

3    This findings and recommendations is submitted to the district judge assigned to this action,

4 pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of

5 service of this recommendation, Plaintiff may file written objections to this findings and

6 recommendations with the Court. Such a document should be captioned "Objections to Magistrate

7 Judge's Findings and Recommendations." The district judge will review the magistrate judge's

8 findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that

9 failure to file objections within the specified time may result in the waiver of rights on appeal.

10 Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391,

11 1394 (9th Cir. 1991)).

12

13 IT IS SO ORDERED.

14 Dated:    **April 4, 2018**

UNITED STATES MAGISTRATE JUDGE